UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAFFI KHATCHADOURIAN,

        Plaintiff,

    v.

CENTRAL INTELLIGENCE AGENCY,

        Defendant.

Civil Action No. 23-3520 (CJN)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Background ........................................................................................................................... 1

    I.     November 2022 Request ....................................................................................... 1

    II.    August 2023 Request ........................................................................................... 3

    III.   Procedural Posture .............................................................................................. 4

Legal Standards .................................................................................................................... 4

    I.     Summary Judgment ............................................................................................. 4

    II.    The *Glomar* Defense ......................................................................................... 7

Argument .............................................................................................................................. 7

    I.     The CIA Conducted an Adequate Search ........................................................... 8

    II.    Defendant Properly Issued a *Glomar* Response to Plaintiff's Two FOIA Requests Under FOIA Exemptions 1 and 3. ......................................................................... 11

          A.    The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 1. ....................................................................................... 11

          B.    The Agency Properly Asserted a *Glomar* Defense Pursuant to Exemption 3 ........................................................................................ 15

Conclusion ......................................................................................................................... 17

# TABLE OF AUTHORITIES

Cases ........................................................................................................................... Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................ 4, 5

*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*,
   830 F.2d 331 (D.C. Cir. 1987) ............................................................................................ 15

*Brayton v. Off. of U.S. Trade,*
   *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) .................................................................................... 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................. 4

*CIA v. Sims*,
   471 U.S. 159 (1985) ........................................................................................................... 15

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................................... 5, 6

*Citizens United v. Dep't of State*,
   Civ. A. No. 18-1862, 2021 WL 32683835 (D.D.C. Jul. 29, 2021) ...................................... 16

*Clemente v. FBI*,
   867 F.3d 111 (D.C. Cir. 2017) ......................................................................................... 8N

*Ctr. for Nat'l Sec. Studies v. Dep't of Just.*,
   331 F.3d 918 (D.C. Cir. 2003) ..................................................................................... 14, 15

*Defenders of Wildlife v. Dep't of Interior*,
   314 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................ 8

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ................................................................................... 5, 9

*Dep't of Just. v. Tax Analysts*,
   492 U.S. 136 (1989) ............................................................................................................. 6

*Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv.*,
   656 F.2d 856 (D.C. Cir. 1981) ........................................................................................... 15

*Gallant v. Nat'l Lab. Rels. Bd.*,
   26 F.3d 168 (D.C. Cir. 1994) .............................................................................................. 7

*Goldberg v. Dep't of State*,
   818 F.2d 71 (D.C. Cir. 1987) ............................................................................................ 14

*Greenberg v. Dep't of Treasury*,
   10 F. Supp. 2d 3 (D.D.C. 1998) .......................................................................................... 8

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) ............................................................................................ 5

*Jud. Watch, Inc. v. Rossotti*,
   285 F. Supp. 2d 17 (D.D.C. 2003) ...................................................................................... 8

*Jud. Watch, Inc. v. U.S. Dep't of Hous. & Urb. Dev*,
   20 F. Supp. 3d 247 (D.D.C. 2014) ...................................................................................... 6

*Knight First Amend. Inst. v. CIA*,
   11 F.4th 810 (D.C. Cir. 2021) ............................................................................................. 7

*Kowalczyk v. Dep't of Just.*,
   73 F.3d 386 (D.C. Cir. 1996) .............................................................................................. 8

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ........................................................ 5, 7, 14, 16

*Marks v. Dep't of Just.*,
   578 F.2d 261 (9th Cir. 1978) ................................................................ 8

*McGehee v. Casey*,
   718 F.2d 1137 (D.C. Cir. 1983) ........................................................... 14

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ............................................................ 5

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ............................................................. 6

*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ....................................................... 5

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................... 5, 6

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
   216 F.3d 1180 (D.C. Cir. 2000) ............................................................ 6

*Nat'l Treasury Emps. Union v. U.S. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986) ............................................................. 6

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) .............................................................. 8

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ............................................................. 7

*Privacy Info. Ctr. v. Dep't of Just.*,
   296 F. Supp. 3d 109 (D.D.C. 107) ........................................................ 16

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 5, 8

*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ............................................................. 6

*Truitt v. Dep't of State*,
   897 F.2d 540 (D.C. Cir. 1990) ............................................................. 8

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ............................................................. 8

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ............................................................. 6

*Wheeler v. C.I.A.*,
   271 F. Supp. 2d 132 (D.D.C. 2003) ...................................................... 14

Statutes

5 U.S.C. § 552 ............................................................................................................. 1
5 U.S.C. § 552(a)(2)(A) ........................................................................................ 7, 15
5 U.S.C. § 552(a)(4)(B) ............................................................................................. 6
5 U.S.C. § 552(a)(8) ................................................................................................. 17
5 U.S.C. § 552(b) ....................................................................................................... 6
5 U.S.C. § 552(b)(1) ................................................................................................ 11
5 U.S.C. § 552(b)(3) ................................................................................................ 17
5 U.S.C. §552(b)(3)(B) ............................................................................................ 16
50 U.S.C. §3024(i)(1) ..................................................................................... 3, 4, 16
50 U.S.C. § 3003(4)(H) ............................................................................................ 16
50 U.S.C. § 3507 ............................................................................................ 2, 4, 17

Rules

Fed. R. Civ. P. 56(a) .................................................................................................. 4

In this Freedom of Information ("FOIA"), 5 U.S.C. § 552, case Plaintiff Raffi Khatchadourian requests that the Central Intelligence Agency ("CIA") disclose records responsive to Plaintiff's November 23, 2022 and August 16, 2023 FOIA requests. Plaintiff's November 23, 2022 FOIA request ("November 2022 Request") specifically seeks certain records about the International Whaling Commission, whales or whaling, and "pirate" whaling. Plaintiff's August 16, 2023 FOIA request ("August 2023 Request") specifically seeks any records pertaining to decedent, James Ralph Rose, Jr. As discussed below, the undisputed record shows that the CIA completed a reasonable search for all records responsive to Plaintiff's two requests and properly invoked FOIA Exemptions 1 and 3 to refuse to confirm or deny whether it possesses records, if any exist, that would reveal an unacknowledged or classified association with the subject of Plaintiff's requests. Plaintiff, moreover, does not challenge the CIA's withholdings applied to records produced in response to Plaintiff's November 2022 Request. Thus, because there are no material disputes of fact as to the only remaining issues in this case, the Court should enter summary judgment in the CIA's favor.

## BACKGROUND

Defendant respectfully refers the Court to the accompanying Statement of Material Facts Not in Genuine Dispute ("Statement") for the factual background in this matter and briefly summarizes the salient facts here for purposes of this motion.

## I.    November 2022 Request

By letter dated November 23, 2022, Plaintiff submitted his first, November 2022 Request, which seeks:

> [A]ny historical documents generated at CIA about:
> 1. Activities at the International Whaling Commission (I.W.C.) in the time period between 1977 and 1982.
> 2. Records on the subject of whales or whaling that were generated between 1974 and 1982.

> 3. Information on non-IWC, or "pirate" whaling, including but not
> limited to two foreign-registered ships operating in the 1970s and
> the companies that controlled them:
>> a. M/V Sierra, and;
>> b. The M/V Tonna.

*See* Def.'s Stmt. of Material Facts Not in Genuine Dispute ("Stmt.") ¶ 1. By letter dated December 15, 2022, the CIA acknowledge receipt of Plaintiff's November 2022 Request and assigned it reference number F-2023-00380. *See id.* ¶ 2. After conducting a thorough and diligent search to reasonably locate records that would reveal an open, unclassified, or officially acknowledged affiliation or relationship between the subject matter of the request and the Agency, the CIA located eight records. *See id.* ¶¶ 15–22.

By letter dated July 25, 2024, the CIA provided its first interim response to Plaintiff's November 2022, which included the production of six documents, portions of which were redacted pursuant to Exemptions 1, 3, and 6. *See id.* ¶ 3. The letter also acknowledged that the CIA gathered two other documents belonging to another government agency and that those documents were referred to that other government agency for further review and release. *See id.* ¶ 4. By letter dated August 15, 2024, the CIA provided its final response to Plaintiff's November 2022 Request, in which it asserted a *Glomar* response. *See id.* ¶ 5. This response specifically stated:

> To the extent that your request . . . seeks records, if any exist, that
> would reveal an unacknowledged or classified association with the
> subject of your request, in accordance with Section 3.6(a) of
> Executive Order 13526, as amended, we can neither confirm nor
> deny the existence or nonexistence of such records. If a classified
> association between the subject and this organization were to exist,
> records revealing such a relationship would be properly classified
> and require continued safeguards against unauthorized disclosure.
> You may consider this finding a denial of this portion of your
> request pursuant to FOIA exemptions (b)(1) and (b)(3). Exemption
> (b)(3) pertains to information exempt from disclosure by statute. In
> this case, the relevant statutes are Section 6 of the Central
> Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended,

and Section 102A(i)(1) of the National Security Act of 1947, 50
U.S.C. §3024(i)(1), as amended.

*See id.* ¶ 6.

## II. <u>August 2023 Request</u>

By letter dated August 16, 2023, Plaintiff submitted the August 2023 Request, which seeks,
"any CIA files that pertain to James Ralph Rose, Jr." *See id.* ¶ 7. The request further specifies that
Plaintiff requests "[a]ny records from the sixties that indicate and/or detail Mr. Rose's involvement
with the CIA in Vietnam, and any records about his activities with CIA in the seventies, as a
contractor of some kind" and "any records, beginning in 1978, that constitute or describe the help
that CIA provided the FBI in the Rose investigation. (FBI CASE No.: 240-369-K8)." *Id.* ¶ 8. By
letter dated September 12, 2023, the CIA acknowledge receipt of Plaintiff's August 2023 Request
and assigned it reference number F-2023-01916. *See id.* ¶ 9. The CIA then conducted a thorough
and diligent search to reasonably locate records that would reveal an open, unclassified, or
officially acknowledged affiliation or relationship between the subject matter of the request and
the Agency but found no responsive records. *See id.* ¶¶ 15–18, 23–26.

Thus, by letter dated July 25, 2024, the CIA provided a final response to Plaintiff's August
2023 Request in which informed Plaintiff that after conducting "a search for records that would
reveal a publicly acknowledged Agency association with the subject of [the August 2023 FOIA
Request] existing up to and including the date the Agency started its search," the CIA "located no
responsive documents." *See id.* ¶ 10. The letter further asserted a *Glomar* response. *See id.* ¶ 11.
Specifically, it stated:

> To the extent that your request . . . seeks records, if any exist, that
> would reveal an unacknowledged or classified association with the
> subject of your request, in accordance with Section 3.6(a) of
> Executive Order 13526, as amended, we can neither confirm nor
> deny the existence or nonexistence of such records. The admission
> of existence or nonexistence of such records is a fact that is exempt

under FOIA. You may consider this finding a denial of this portion of your request pursuant to FOIA exemptions (b)(1) and (b)(3). Exemption (b)(3) pertains to information exempt from disclosure by statute. In this case, the relevant statutes are Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. §3024(i)(1), as amended.

*See id.* ¶ 12.

## III.  Procedural Posture

Plaintiff initiated this suit on November 24, 2023. *See* Compl., ECF No.1. At a Status Conference on August 8, 2024, Plaintiff, through counsel, represented that Plaintiff has no issues regarding the propriety of the redactions applied to six documents that the CIA produced in response to Plaintiff's November 2022 Request, and that the only remaining issues Plaintiff challenges in this case are the sufficiency of the CIA's search, including the reasonableness of its search, and the CIA's assertion of a *Glomar* Defense.[1] *See id.* ¶ 13. Therefore, Defendant moves for summary judgment on the sole remaining issues in this case as follows.

## LEGAL STANDARDS

## I.  Summary Judgment

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

---

[1]    To the extent Plaintiff later challenges the redactions applied to the two documents referred to another government agency, Defendant asks that the Court construe this motion as a partial motion for summary judgment and allow time for Defendant to brief any challenges to those redactions.

A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

An agency is entitled to summary judgment if it shows that "it has fully discharged its obligations under . . . FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Jud. Watch, Inc. v. U.S. Dep't of Hous. & Urb. Dev*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014). FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index or declaration that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv*., 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)).

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project*, 656 F.2d at 738); *see Spirko v. U.S. Postal Serv*., 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing

similar information can suffice.") (citing *Gallant v. Nat'l Lab. Rels. Bd.*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## II.    The *Glomar* Defense

A FOIA request that comports with agency rules and reasonably describes the records sought generally triggers an agency's duty to produce responsive records. 5 U.S.C. § 552(a)(2)(A). That duty is subject to nine enumerated exemptions. *Id.* § 552(b). "To claim a FOIA exemption, an agency ordinarily must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021) (internal quotation marks omitted). But when even "the fact of the existence or nonexistence of agency records itself falls within a FOIA exemption," the agency "may refuse to confirm or deny the existence of the requested records." *Id.* (internal quotation marks omitted). "This is now known as a *Glomar* response, after the Central Intelligence Agency successfully refused to confirm or deny whether it had records about a ship called the *Glomar Explorer*." *Id.* "In considering a *Glomar* response, courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* (internal quotation marks omitted). Accordingly, the nine enumerated exemptions under FOIA "cover not only the content of the protected government records but also the fact of their existence or nonexistence, if that fact proeprly falls within the exemption." *Larson,* 565 F.3d at 861 (internal quotations omitted).

## ARGUMENT

Summary judgment in favor of the CIA is warranted because the CIA properly conducted a search for responsive records, which returned eight unclassified documents responsive to

Plaintiff's November 2022 Request and no unclassified records responsive to Plaintiff's August 2023 Request, and properly refused to deny or confirm the existence of any classified information Plaintiff sought pursuant to FOIA Exemptions 1 and 3.

## I.    The CIA Conducted an Adequate Search

An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive records are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby*, 920 F.2d at 68.

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d

1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Applying these principles, the CIA is entitled to summary judgment with respect to the adequacy of its search.

Here, there is no material doubt that the CIA conducted an adequate and reasonable search in response to Plaintiff's two FOIA requests because its search was reasonably calculated to uncover all relevant documents. As the declaration of Mary C. Williams, explains, once a FOIA request is received, experienced information review and release professionals perform a search reasonably calculated to uncover all relevant documents. *See* Stmt. ¶ 14. After receiving each of Plaintiff's two requets, the CIA followed this criteria, subject to further descriptions and limitations provided in Williams' declaration. *See id.* ¶¶ 15–16. Specifically, because the CIA asserted a *Glomar* responses the CIA's searches were limited to only those records that would reveal an open, unclassified, or officially acknowledge affiliation or relationship between the subject matter of the request and the Agency. *See id.* ¶ 16. Within this scope of search, the employees who performed the CIA's searches for records responsive to Plaintiff's requests were knolwedgeable about the CIA's record systems and where protentially responsive records would be located with the CIA's record systems. *See id.* ¶ 17. The professionals were also qualified to search pertinent records, regularly search CIA records in the course of their profesional duties, and have access to pertinent records. *See id.* ¶ 17. These professionals performed electronic and hard copy searches of CIA records, including archived records. *See id.* ¶¶ 17–18.

Specfically, for the November 2022 Request, the CIA's information review and release professionals searched three different records systems, including (1) indices of all archived hard-copy CIA records; (2) electornoic versions of all CIA records that have been reviewed and/or

compiled for potential public release; and (3) multiple repositories of non-operational intelligence reporting from various sources. *See id.* ¶ 19. The CIA searched these locations because they were deemed to be the only locations reasonably likely to contain responsive records that would not reveal classified or statutorily-protected ifnromaton if their existence or non-existence were acknolwedged. *See id.* ¶ 20. When performing this search, the CIA based its search on the date parameters specified by Plaintiff in his November 2022 Request, and used search terms based on the language of that request as well, including different variations and combinations of the terms "International Whaling Commission," "Whaling," "Pirate Whaling," "Sierra," and "Tonna." *See id.* ¶¶ 1, 21. As a result of this thorough and diligent search for records that would reveal an open, unclassified, or officially acknolwedged affiliation or relationship between the the CIA and the subject of the November 2022 request, the CIA uncovered eight responsive records. *See id.* ¶¶ 20, 22.

Similiarly, for the August 2023 Request, the CIA's information review and release professionals searched two different records systems, including (1) a system containing information regarding personnel affiliated with the CIA, and (2) a system comtaining security records. *See id.* ¶ 23. Again, the CIA searched these locations because each were deemed to be the only locations reasonably likely to contain responsive records that would not reveal classified or statutorily-protected information if their existence or non-existence were acknolwedged. *See id.* ¶ 24. When performing this search, the CIA, again based its search on date parameters specfied by Plaintiff's August 2023 Request, and and used the name of the subject for the search, in connection with his date of birth, and social security number. *See id.* ¶¶ 7–8, 25. This search yielded no responsive records that would reveal an open, unclassified, or officially acknolwedged affiliation or relationshp between the subject of the request and the Agency. *See id.* ¶ 26.

As for both requests, for any records, the acknolwedgment of the existence or non-existence of which would reveal classified or statutorily-protected information, the CIA invoked the *Glomar* response pursuant to Exemptions 1 and 3 and neither confirmed nor deneid the existence or nonexistence of such records. *See id.* ¶¶ 5–6, 11–12.

Thus, because the CIA conducted a thorough search that was reasonably calculated to uncover all relevant documents subject only to those that would reveal an open, unclassified, or officially acknowledged affiliation or relationship between the CIA and the subject of the requests, and because the CIA properly refused to admit or deny the existence of any records that would reveal a classfied connection between the subjects of Plaintiff's request and the CIA, the Court should enter judgment in the CIA's favor on the adequacy of the search issue.

## II. Defendant Properly Issued a *Glomar* Response to Plaintiff's Two FOIA Requests Under FOIA Exemptions 1 and 3.

As previously discussed, with respect to records, if any exist, for which the acknowledgment of the existence or non-existence of those records would implicate classified or statutorily-protected information, the CIA properly issued a *Glomar* response, based on FOIA Exemptions 1 and 3.

### A. The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 1.

With regard to the CIA's invocation of Exemption 1 in its *Glomar* response to both requests, such application was proper. Exemption 1 protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the CIA properly identified sections 1.1(a) and 3.6(a) of Executive Order 13526, which governs the classification, declassification, and safeguarding of national security

information, as the basis on which to assert its *Glomar* responses pursuant to Exemption 1. *See* Stmt. ¶ 27.

Section 1.l(a) of Executive Order 13526 provides that information may be originally classified under the terms of this order if the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in Section 1.4 of E.O. 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage. *See id.* ¶ 28. In addition, in accordance with section 1.7(a) of the Executive Order, information may not be classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. *See id.* ¶ 29.

Section 3.6(a) of Executive Order 13526 further states that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." E.O. 13526; *see also* Stmt. ¶ 30. This provision, therefore explicitly authorizes the CIA's Glomar response to Plaintiff in this case. *See id.* ¶ 31.

After reviewing sections 1.1(a) and 3.5(a) of Executive Order 13562, the CIA determined that it could not confirm or deny the existence of certain types of records responsive to Plaintiff's request that might reveal currently and properly classified information that falls within one or more categories of informaiton listed in sections 1.4(a) and (d) of the Executive Order, including

"intelligence activities," "intelligence sources and methods," and "foregin relations or foregin activities of the Untied States." *See id.* ¶ 32. As Ms. Williams' declaration further explains, consistent with section 1.7(a) of the Executive Order, the CIA's *Glomar* determination was not made to conceal violations of law, inefficiency, or adminsitrative error; to prevent embarassmetn to a person, organization, or agency; to restrain competition, or to prevent or delay the release of information that does not require protection in the interest of national security. *See id.* ¶ 33.

Instead, Ms. William's declaration explains that the CIA made its *Glomar* determaination because, with the CIA's mandate to collect and analyze foreign intelligence and to conduct counterintelligence, the mere fact of whether the CIA possesses responsive records may itself reveal the CIA's intentigence interest in, or clandestine connection to, a particular individual or acivity. *See id.* ¶ 34. Moreover, because CIA's intelligence activities are typically carried out through clandestine means, they must remain secret to maintain effectiveness. *See id.* ¶ 35. Responding, however, to the subtance of a certain FOIA request could jeopardize the clandestine nature of the Agency's intelligence activities or reveal previously undisclosed information about the CIA's sources, capabilities, authorities, interests, domestic or foreign relationships, strengths, vulnerabilities, and/or resources. *See id.* ¶ 36. To protect its mandate, the CIA, therefore, uses *Glomar* responses consistently even where the nonexistence of responsive records appears to be of little consequence. *See id.* ¶¶ 34, 37. After all, if the CIA only invoked the *Glomar* response when resposnive classified records were located, then the response would serve, effectively, as an admission that such records exist, and thereby undermine the information the CIA is obligted to protect in interest of national security. *See id.* ¶ 38.

Thus, in this case, because the acknowledgment of the existence or non-existence of records that might reveal a classified or otherwise unacknowledged association between the

subject of Plaintiff's FOIA requests and the CIA, the CIA reasonbly determined and explained why it could not confirm or deny whether it has in its possession any such records, if they exist. *See id.* ¶ 39. To provide otherwise, would reveal whether or not the subjects had a covert or clandestine association with the CIA, or whether the CIA had an intelligence interest in the subjects. *See id.* ¶ 40. Revealing this information could then reasonably result in damage to national security. *See id.* ¶ 41.

Plaintiff has suggested that Defendant's *Glomar* response is not proper because Plaintiff is seeking old records, implying that a request for older records could never be protected under Exemption 1. *See* May 24, 2024 Joint Status Report, ECF No. 16 at 5 (paragraph 12). But this argument is without merit. *See Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 140 (D.D.C. 2003) (rejecting the argument that intelligence from or about Cuba in 1969 is *per se* too ancient to warrant continued withholding in 2003). Instead, courts in this Circuit have "consistently deferred to executive affidavits predicting harm to the national security." *Larson*, 565 F.3d at 865. Specifically, courts in this Circuit regularly look to and defer to the experience and expertise of the government in determining that records have national security implications sufficient to trigger Exemption 1. *See, e.g., Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[W]e owe deference to the government's judgments contained in its affidavits."); *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987) ("[C]ourts routinely defer to government affidavits stating that documents had been properly classified, without engaging in any direct substantive review of the withheld information."); *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983) ("courts are to accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record").

Because the CIA has provided a sufficiently detailed affidvit that adequately demonstrates the national security concerns covered under the applicable Executive Order, this Court should defer to the CIA's assessment and find that the CIA's invocation of Exemption 1 to support its *Glomar* defense was proper. *See also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]in the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.").

### B.    The Agency Properly Asserted a *Glomar* Defense Pursuant to Exemption 3

The CIA also properly asserted a *Glomar* defense pursuant to Exemption 3 in response to both Plaintiff's two FOIA requests. Exemption 3 covers matters "specifically exempted from disclosure by statute" provided that such statute leaves no discretion on disclosure or "establishes particular criteria for withholding or refers to types of matters to be withheld." *Id*. § 552(b)(3).

Once an agency establishes that a statute is a nondisclosure statute that meets at least one of the requirements of Exemption 3, it must also establish that the records in question fall within the withholding provision of the nondisclosure statute. *Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 866-68 (D.C. Cir. 1981); *CIA v. Sims*, 471 U.S. 159, 167 (1985). Exemption 3 is different from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; rather, the sole issue for decision is the existence of a controlling statute and the inclusion of the withheld information within the statute's coverage. *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

Here, the CIA invoked Exemption 3 to support its *Glomar* defense becuase section 102A(i)(1) of the National Security Act of 1947 ("National Security Act") exempts the information protected by the CIA's *Glomar* defense from disclosure. *See* Stmt. ¶ 42. Notably, becuase this statute was passed prior to the date of enactment of the OPEN FOIA Act of 2009, it need not cite

to FOIA in order for the CIA to rely on it for purposes of Exempton 3. *See* 5 U.S.C. § 552(b)(3)(B).

Thus, to prevail on summary judgment, the CIA "need only show that the statute claimed is one

of exemption as contemplated by Exemption [(b)(3)] and that the withhheld material falls within

the statute." *Larson*, 565 F.3d at 865. With respect to this Exemption, "the Court must [aslo] defer

to the [CIA's] determination because [t]he judiciary 'is in an extremely poor position to second-

guess the predictive judgmetns made by the government's intelligence agencies regarding the risk

of disclosure or the harm posed by such disclosure." *Citizens United v. Dep't of State*, Civ. A. No.

18-1862, 2021 WL 32683835, at *6 (D.D.C. Jul. 29, 2021) (cleaned up).

As Ms. Williams' declaration explains, the National Security Act, states that "[t]he Director

of National Intelligence . . . shall protect intelligence sources and methods from unauthorized

disclosure." 50 U.S.C. § 3024(i)(1); *see* Stmt. ¶ 43 (citing 50 U.S.C. § 3024(i)(1)). Under this Act,

and in conjunction with section 1.6(d) of Executive Order 12333, the Director of the CIA is

required to protect CIA intelligence sources and methods from unauthorized disclosure. *See* Stmt.

¶ 44. The Director of National Intelligence "has delegated enforcement of this National Security

Act mandate to the heads of the 17 agencies that constitute the Intelligence Community," *Elec.*

*Privacy Info. Ctr. v. Dep't of Just.*, 296 F. Supp. 3d 109, 121 (D.D.C. 107) (internal quotation

marks, citation, and alterations omitted), and the CIA is one of those delegees, *see* 50 U.S.C. §

3003(4)(H). The CIA made its determination in this case that its *Glomar* defense satisfies the

criteria of the exemption statute—the National Security Act—because as just discussed, above,

acknowledging the existence or nonexistence of records reflecting a classified or otherwise

unacknowledged connection between the CIA and the subject of Plaintiff's FOIA requests would

reveal information that concerns intelligence sources and methods—information protected under

the National Security Act. *See* Stmt. ¶ 45.

The CIA also concluded that confirming or denying the existence or nonexistence of the records responsive to Plaintiff's request is also protected under section 6 of the CIA Act. *See id.* ¶ 46; 50 U.S.C. § 3507. Section 6 of the CIA Act provides that the CIA shall be exempted from provisions of any law which require the publication or disclosure of the "organization or functions of the Agency, or the names, official titles, salaries, or numbers of personnel employed by CIA." 50 U.S.C. § 3507; *See Stmt.* ¶ 47. Thus, the CIA Act constitutes a federal statute that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see* Stmt. ¶ 48. Confirming the existence or nonexistence of records on a particular individual, like James Rose, could reveal how CIA collects (or does not collect) certain information on particular subjects or individuals and/or could reveal information about the methods by which the Agency does (or does not) effectuate such collection, both of which pertain to intelligence collection—a function of the Agency. *See* Stmt. ¶ 49.

As a final matter, although Exemption 3 does not require the CIA to identify and describe the damage to the national security interest, such damage is reasonably foreseeable, for the same reasons described above regarding the CIA's application of Exemption 1. *See* 5 U.S.C. § 552(a)(8). Should the CIA have to confirm the existence or not of unclassified records responsive to Plaintiff's request, this would tend to reveal whether or not the subjects had a covert or clandestine association with the CIA, or whether or not the CIA had an intelligence interest in the subjects and could reasonably be expected to result in damage to the national security. *See* Stmt. ¶¶ 39–41, 50. On these bases, the CIA has met its obligations for invoking a *Glomar* response under Exemption 3.

*        *        *

**CONCLUSION**

For the foregoing reasons, Defendant requests that the Court grant its motion for summary judgment.

Dated: September 27, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ */s/ Anna D. Walker* _____
ANNA D. WALKER
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2544

*Attorneys for the United States of America*