UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAFFI KHATCHADOURIAN,<br><br>      Plaintiff,<br><br>  v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>      Defendant. | Civil Action No. 23-3520 (CJN) |

**COMBINED REPLY IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION
<u>TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................................. i

Table of Authorities ....................................................................................................................... ii

Introduction ................................................................................................................................... 4

Background .................................................................................................................................... 4

Summary of arguement .................................................................................................................. 4

Argument ....................................................................................................................................... 5

    I.    CIA Performed a Reasonable and Adequate Search for Responsive Records. ...... 5

        A.    CIA's Declaration Establishes a Presumption that the CIA's Search in Response to the November 2022 Request Was Reasonable and Adequate that Plaintiff Fails to Defeat .......................................................................... 6

        B.    CIA's Declaration Establishes a Presumption that the CIA's Search in Response to the August 2023 Request Was Reasonable and Adequate that Plaintiff Fails to Defeat .............................................................................. 8

        C.    Plaintiff's Attempt to Impose a Requirement on Agencies to Produce Boolean Connectors is Improper ................................................................ 10

    II.    CIA Properly Invoked a *Glomar* Response in Withholding Certain Information and, Where Applicable, Demonstrated Foreseeable Harm That Would Result from Release. ........................................................................................................................ 11

        A.    The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 1. ............................................................................................................................ 11

        B.    The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 3 ............................................................................................................................ 13

Conclusion ................................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

Cases

*Branch v. FBI*,
  700 F. Supp. 47 (D.D.C. 1988) .................................................................................. 9, 10

*Brown v. Dep't of Just.*,
  742 F. Supp. 2d 126 (D.D.C. 2010) ................................................................................. 5

*Defenders of Wildlife v. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................................... 3

*Fischer v. Dep't of Just.*,
  596 F. Supp. 2d 34 (D.D.C. 2009) ................................................................................. 11

*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ................................................................................... 3

*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) ........................................................................................... 3

*Krikorian v. Dep't of State*,
  984 F.2d 461 (D.C. Cir. 1993) ....................................................................................... 12

*Marks v. Dep't of Just.*,
  578 F.2d 261 (9th Cir. 1978) ........................................................................................... 3

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ....................................................................................... 11

*Oglesby v. Dep't of Army*,
  79 F.3d 1172 (D.C. Cir. 1996) ......................................................................................... 9

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ........................................................................................... 4

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ................................................................................... 3, 5

*Schoenman v. FBI*, Civ. A.,
  No. 04-2202 (CKK), 2009 WL 763065 (D.D.C. Mar. 19, 2009) ............................. 10, 11

*Steinberg v. Dep't of Just.*,
  23 F.3d 548 (D.C. Cir. 1994) ........................................................................................... 5

Statutes

5 U.S.C. § 552 ............................................................................................................................. 13

Pub. L. 105-246 (1998) ......................................................................................................... 3, 4, 12

## INTRODUCTION

Defendant Central Intelligence Agency (the "CIA") respectfully files this combined reply in further support of its motion for summary judgment ("Motion" or "Mot.," ECF No. 19) and memorandum in opposition to Plaintiff Raffi Khatchadourian's cross motion for summary judgment (ECF No. 27-2) in this Freedom of Information Act ("FOIA") case. For the reasons stated below and in Defendant's Motion, the Court should deny Plaintiff's motion, grant Defendant's motion, and enter summary judgment for Defendant.

## BACKGROUND

In this case, Plaintiff requests that the CIA disclose records responsive to Plaintiff's November 23, 2022, and August 16, 2023, FOIA requests. Plaintiff's November 23, 2022, FOIA request ("November 2022 Request") specifically seeks certain records about the International Whaling Commission (the "IWC"), whales or whaling, and "pirate" whaling. Plaintiff's August 16, 2023, FOIA request ("August 2023 Request") specifically seeks any records pertaining to decedent, James Ralph Rose, Jr. Def. Mot., Decl. of Mary C. Williams ("Williams Decl."), ECF No. 19-3 at 3-4.

CIA completed a reasonable search for all records responsive to Plaintiff's two requests and properly invoked FOIA Exemptions 1 and 3 to refuse to confirm or deny whether it possesses records, if any exist, that would reveal an unacknowledged or classified association with the subject of Plaintiff's requests. Plaintiff, moreover, does not challenge the CIA's withholdings applied to records produced in response to Plaintiff's November 2022 Request. The contested issues in this case pertain to (1) the adequacy of the CIA's search regarding Plaintiff's November 2022 Request and a single component of the August 2023 Request, as well as (2) the application of the CIA's *Glomar* response under FOIA Exemptions 1 and 3.

## SUMMARY OF ARGUEMENT

Plaintiff hinges its objections to the CIA's reasonable search on three grounds, none of which find support in caselaw. First, Plaintiff objects on the misguided belief that CIA could not have

conducted a reasonable search for responsive records if most produced records were already available on the agency's public reading room. *See* Pl.'s Cross Mot. for Summ. J. (ECF No. 27-2 at 12-14) ("Plaintiff's Cross Motion" or "Pl. Br."). Second, Plaintiff relies on speculation to suggest responsive records within the CIA's custody may exist and were not uncovered in the agency's search. *Id*. at 16. Lastly, Plaintiff relies on out-of-circuit caselaw to demand a new requirement under FOIA that agencies produce "Boolean connectors" to defend their application of search terms for FOIA request. *Id*. at 17-18.

Plaintiff's three objections to the CIA's *Glomar* response similarly fail. First, Plaintiff invokes an unsupported requirement for agencies to adequately assert "present-day significance" to records to claim a defense under FOIA exemptions. *Id*. at 20. Second, Plaintiff again speculates, without direct evidence, that records related to a public trial cannot be defensible under *Glomar* if such records "had nothing to do with the CIA's core functions." *Id.* at 22. Lastly, Plaintiff wrongly attempts to suggest that unrelated records produced by non-governmental agencies somehow demonstrate the CIA lacks any equities in asserting FOIA exemptions available to it. *Id.* at 25.

Ultimately, Plaintiff fails to demonstrate any basis, through material facts or caselaw, that the CIA failed to conduct a reasonable search for productive records or has misapplied FOIA exceptions under its *Glomar* response. Because the record evidence demonstrates that CIA's search was both reasonable and adequate, and its application of exemptions was warranted, summary judgment in the CIA's favor is warranted.

## ARGUMENT

**I.** **<u>CIA Performed a Reasonable and Adequate Search for Responsive Records.</u>**

As an initial matter, the record evidence demonstrates that CIA performed a reasonable and adequate search for responsive records pursuant to FOIA. Plaintiff's arguments to the contrary lack merit.

A. **CIA's Declaration Establishes a Presumption that the CIA's Search in Response to the November 2022 Request Was Reasonable and Adequate that Plaintiff Fails to Defeat**

First, Plaintiff argues the CIA's identification of eight records responsive to the November 2022 Request, including five records that were previously released on the CIA's reading library, inherently suggests the agency failed to look elsewhere for responsive records.[1] *See* Pl. Br. at 12. However, Plaintiff has provided no evidence to suggest responsive records could reasonably be expected to be identified in a system outside the CIA's search. In fact, Plaintiff makes no attempt to defeat the presumption that the CIA's search was reasonable and adequate. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured"). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive records are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish a presumption that its search was resonable and adequate, "the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).

---

[1] Plaintiff suggests two records identified as responsive by the CIA have not been released thus far and therefore should be considered in this Court's ruling. Pl. Br. at 12. However, the parties have already made the Court aware that these records were referred to the United States Department of State for direct response to Plaintiff. *See* Def's Stmt. Of Material Facts not in Genuine Dispute ¶4. Plaintiff has not raised objections to the referral of these records.

As the declaration of Mary C. Williams, explains, once a FOIA request is received, experienced information review and release professionals perform a search reasonably calculated to uncover all relevant documents. *See* Williams Decl. ¶ 14. After receiving each of Plaintiff's November 2022 request, the CIA followed these criteria, subject to further descriptions and limitations provided in Williams' declaration. *See id*. ¶¶ 15–16. The CIA's information review and release professionals searched three different records systems, including (1) indices of all archived hard-copy CIA records; (2) electornoic versions of all CIA records that have been reviewed and/or compiled for potential public release; and (3) multiple repositories of non-operational intelligence reporting from various sources. *See id.* ¶ 19. The CIA searched these locations because they were deemed to be the only locations reasonably likely to contain responsive records that would not reveal classified or statutorily-protected ifnromaton if their existence or non-existence were acknolwedged. *See id.* ¶ 20. The identification of these search locations being thte only locations reasonably likley to contain resposive recrods was based on the subject matter expert's review of the age and type of records the Plaintff sought. *Id.* When performing this search, the CIA based its search on the date parameters specified by Plaintiff in the November 2022 Request, and used search terms based on the language of that request as well, including different variations and combinations of the terms "International Whaling Commission," "Whaling," "Pirate Whaling," "Sierra," and "Tonna." *See id.* ¶¶ 1, 21.

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs.*, 926 F.2d at 1201. Plaintiff's argument fails to attack that the CIA's search was reasonably calculated, instead relying on speculation that additional records must exist due to an alleged "significant interest in the action and decisions of the IWC." Pl. Br. at 13. However, Plaintiff cannot rebut the good faith presumption afforded the agency "through 'purely speculative claims about the existence and

discoverability of other documents.'" *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *see also Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("mere speculation that as yet uncovered documents may exist" is insufficient to defeat summary judgment). Without addressing whether the CIA's search was reasonably calculated, Plaintiff fails to defeat the presumption that the agency's search was reasonable and adequate based on mere speculation.

  **B. CIA's Declaration Establishes a Presumption that the CIA's Search in Response to the August 2023 Request Was Reasonable and Adequate that Plaintiff Fails to Defeat**

Next, Plaintiff argues the CIA's search for responsive records regarding the August 2023 Request's third component was inadequate by alleging no effort was made by the agency to locate responsive records.[2] *See* Pl. Br. at 16. Plaintiff's request specifically sought, "records beginning in 1978 related to the CIA helping the FBI in Rose's trial and investigation Complaint." *Id*. at 15. Plaintiff's argument relies, again, on mere speculation that responsive records should exist in the CIA's custody, but fails to meet its burden to demonstrate the agency's search of systems was not reasonably calculated.

For the August 2023 Request, the CIA's information review and release professionals searched two different records systems, including (1) a system containing information regarding personnel affiliated with the CIA, and (2) a system containing security records. *See* Williams Decl.. ¶ 23. Again, the CIA searched these locations because each were deemed to be the only locations reasonably likely to contain responsive records that would not reveal classified or statutorily-protected information if their existence or non-existence were acknolwedged. *See id.* ¶ 24. These locations were idenitfied by the agency's subject matter expert because of the type of records sought by Plaintiff were assocaited with an indivdual in a historical context. When performing this search, the CIA, again, based its search

---

[2] Plaintiff's brief concedes the CIA's search for responsive records regarding the remainder of the August 2023 Request was adequate and sufficient. *See* Pl. Br. at 15.

on date parameters specfied by Plaintiff's August 2023 Request, and and used the name of the subject for the search, in connection with his date of birth, and social security number. *See id.* ¶¶ 7–8, 25. This search yielded no responsive records that would reveal an open, unclassified, or officially acknowledged affiliation or relationshp between the subject of the request and the Agency. *See id.* ¶ 26. Based on the agency's declaration, CIA is entitled to a presumption that its search was resonable and adequate. *Defenders of Wildlife*, 623 F. Supp. 2d at 91.

Plaintiff attmepts to rebut the CIA's presumption by suggesting records produced by the Federal Buearu of Investigation, through a separate FOIA request, "appear to indicate correspeondence with the CIA" and therefore suggests that responsive records to Plaintiff's request should be within the CIA's custody. Pl. Br. at 16 (citing Khatchadourian Decl. ¶ 2,8). As further support, Plaitniff also suggests records should exist related to a CIA spokeperson being on hand to testify to the CIA's non-involvement into the criminal investigation of Mr. Rose. *Id*. At most, Plaintiff asserts the alleged evidence "raises the likelihood that additional responsive records exist for which the CIA has yet to condcut a search, including of the CIA's Public Affairs Office." *Id*. Again, the specualtion of the existence of resposive records fails to defeat the CIA's presumption that its search was reasonably calculated.

Speculative or hypothetical assertions are insufficient to raise a material question of fact as to the search's adequacy. *Oglesby*, 920 F.2d at 67 n.13. The CIA's search was reasonably designed to find all responsive records related to the criminal prosecution of an individual sought by Plaintiff, as its search terms were designed to identify all non-confidential records through personal identifiers provided by Plaintiff's FOIA. *See, e.g.*, *Kowal v. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *2 (D.C. Cir. July 16, 2024) (ATF's search adequate when it "searched its N-Force database and Treasury Enforcement Communications System" in response to a request for records related to a criminal defendant's investigation and prosecution). Further, the databases identified as part of the CIA's search were reasonably calculated, as they included systems containing information regarding all personal

affiliations with the CIA and security records. *See* Stmt.. ¶ 24. There is no evidence to support the notion that the CIA would be in possession of Public Affairs records regarding an indivdual Plaintiff acknowledges had no relationship with the CIA or with whose criminal prosecution the CIA was not directly invovled. *See* Pl. Br. at 16. Therefore, Plaintiff is once again unable to refute the presumption that the CIA's search was reasonably calculated and adequate. *See Porup v. Cent. Intel. Agency*, 997 F.3d 1224, 1237 (D.C. Cir. 2021).

### C. Plaintiff's Attempt to Impose a Requirement on Agencies to Produce Boolean Connectors is Improper

Lastly, Plaintiff attacks the CIA's search related to the November 2022 Request by asserting the agency provides "no explanation for how it used the terms that it did employ, and the specific combination and variations it used for searching." *Id*. at 17. Specifically, Plaintiff argues agencies are required to identify "Boolean connectors" to satisfy its burden in FOIA cases that a search was reasonable and adequate. *See id*. at 18. Plaintiff's reliance on out-of-circuit precedent for this requirement is a substantial deviation from this circuit's precedent.

Courts within this District have squarely rejected Plaintiff's attempt to impose Boolean connectors on agencies. *Bigwood v. United States Dep't of Def*., 132 F. Supp. 3d 124, 142 (D.D.C. 2015) ("In support of his arguments, plaintiff cites to case law from the Southern District of New York. The requirements of those cases, however, exceed those imposed by the "reasonableness" standard followed in this Circuit.") (citing *Citizens for Responsibility and Ethics in Washington v. National Indian Gaming Commission*, 467 F. Supp. 2d 40 (D.D.C. 2006)). Further, Plaintiff provides no evidence to support its assertions that without Boolean connectors "it is impossible to assess whether the [CIA's] search was adequate." Pl. Br. at 18*.* Finally, Plaintiff reliance on *Wright v. Federal Bureau of Investigation* is also unfounded, as that court ruled for summary judgment in the Defendant's favor without finding a requirement for the agency to further justify its search terms using Boolean connectors. Civ. A. No. 18-0687 (TSC), 2024 WL 4263867, at *3 (D.D.C. Sept. 23, 2024).

**II.     CIA Properly Invoked a *Glomar* Response in Withholding Certain Information and, Where Applicable, Demonstrated Foreseeable Harm That Would Result from <u>Release.</u>**

Plaintiff largely objects to CIA's *Glomar* response, invoked in connection with FOIA Exemptions 1 and 3, based on the age of the withheld information or CIA's explanations in its declaration. But, as explained below, the age of the records is not dispositive to the Court's inquiry. Moreover, CIA has sufficiently explained the significant national security or privacy interests in the withheld information under Exemption 1, as well as the application of the CIA Act and National Security Act under Exemption 3.

**A.     The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 1.**

1.     The CIA has Sufficiently Explained its Justification to Withhold <u>Information Under Exemption 1 Regarding the November 2022 Request</u>

Plaintiff's challenge to the CIA's application of Exemption 1 rests on the age of the at-issue records responsive to the November 2022 Request. Pl. Br. at 20. But the D.C. Circuit has squarely held that "the mere passage of time is not a per se bar to reliance on exemption 1." *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1183 (D.C. Cir. 1996). Rather, agencies may still properly invoke Exemption 1 "[a]s long as an agency declares through its affidavits that the responsive material has been reviewed to assure the continuing accuracy of its original classification, and that a determination has been made that the withheld information still poses a security risk if released." *Id.* Here, CIA here met both requirements.

CIA specifically explained that it reviewed the records responsive to Plaintiff's request and nonetheless determined that the information in the records "is currently and properly classified." Williams Decl. ¶ 34 ECF No. 19-3 at 13. The information withheld here involves intelligence interests and activities, intelligence methods, classified locations and relationships, and covert relations. *Id*. And for each category of information withheld, CIA specifically addressed why release of the information would still pose a national security risk, despite its historical nature. *See id.* ¶ 36-37 (disclosure of intelligence interests and activities could lead to unforeseen consequences by providing insight to our

adversaries of what the CIA has done in the past as related to what it is capable of or planning to undertake in the future, thereby likely impairing future collection of foreign intelligence).

Ultimately, courts have "[r]ecogniz[ed] that defendant is in the unique position of knowing what individuals and organizations remain of interest to it coupled with the presumption that the type of information defendant is withholding is presumed to endanger national security." *Branch v. FBI*, 700 F. Supp. 47, 49 (D.D.C. 1988). For this reason, courts have upheld agency explanations similar to CIA's explanations here. *See id.* (finding Exemption 1 properly invoked where FBI explained that "the documents contain information concerning individuals and/or Communist Party organizations that remain of interest to the FBI and various law enforcement agencies, intelligence methods and activities utilized by the FBI today, and identifying classified sources."); *Schoenman v. FBI*, Civ. A. No. 04-2202 (CKK), 2009 WL 763065, at *20 (D.D.C. Mar. 19, 2009) (finding CIA adequately explained Exemption 1 in withholding intelligence activities, intelligence information, intelligence methods, foreign activities, and foreign relations by explaining how release could be used by other foreign entities to defeat CIA activities, affect CIA's ability to recruit sources in the future or use certain intelligence methods and sources, or damage relationships with foreign governments, among other things). In this light, CIA properly invoked Exemption 1 in this case.

        2.        The CIA Adequately Explained its Justifications to Withhold Information Under Exemption 1 Responsive to the August 2023 Request

Plaintiff also challenges the CIA's application of Exemption 1 by asserting the CIA has failed to "properly explain how withholding records in this case would undermine the purpose of Executive order 13526" regarding records responsive to the August 2023 Request. Pl. Br. at 19. Plaintiff asserts that records pertaining to a public criminal trial cannot reasonably fall in the Executive Order's protection. *Id.* at 20. Plaintiff relies on the fact that the Federal Bureau of Investigation did not seek to apply Exemption 1 to records it produced to a separate FOIA request as evidence to support its argument. *Id.* However, Plaintiff, once again, fails to defeat the presumption the agency is entitled based

on its sufficient decalaration that the information the agency seeks to withhold endangers national security interests. *Branch*, 700 F. Supp. 47, 49 (1988).

As Plaintiff has acknowledged, the criminal trial about which it seeks responsive records related to alleged transnational terrorist activities. *See* Pl. Br. at 5. As Plaintiff notes, the Executive Order relied upon by the CIA "was created to protect information about transnational terrorism that is critical to the protection of the country. *Id.* at 19 (internal citation omitted) (citing Exec. Order No. 13526, 75 C.F.R. es." § 707). As demonstrated by the Plaintiff's own acknowledgements, the CIA's reliance on Exemption 1 relates to the possible existence of records directly responsive to the purpose of the relied upon executive order. Further, the waiver of one agency's application of FOIA exemptions to a distinctly separate FOIA request does not in any way impact another agency's ability to protect its own equities. Plaintiff provides no evidence to allege these distinctly different agencies are in custody of the same information or equities in the disclosure of such information. In conclusion, Plaintiff has failed to offer any evidence to defeat the presumption that the agency seeks to withhold endangers national security interests.

### B. The CIA Properly Asserted a *Glomar* Response Pursuant to Exemption 3

    1. The CIA Properly Invoked and Provided Sufficient Explanation to Support its *Glomar* Response Pursuant to Exemption 3 Regarding the August 2023 Request

Plaintiff objects to the CIA's invocation of Exemption 3 by arguing that CIA's declaration does not provide sufficient explanation regarding its response to the August 2023 Request. *See* Pl. Br. at 25. Plaintiff's argument lacks merit because it wholly ignores the explanations that CIA provided in the accompanying Williams' Declaration. "The Court may award summary judgment based solely on the information provided in affidavits or declarations[.]" *Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)).

First, CIA explained that it was invoking the CIA Act to withhold "how CIA collects (or does not collect) certain information on particular subjects or individuals and/or could reveal information

about the methods by which the Agency does (or does not) effectuate such collection, both of which pertain to intelligence collection – a function of the Agency." Williams Decl. ¶ 37, ECF No. 19-3 at 15. Second, CIA explained that it was invoking the National Security Act to withhold information it also withheld as classified under Exemption 1, including information relating to specific intelligence sources and methods. As explained above, CIA provided sufficient detail as to the nature of these intelligence sources and methods. *See supra* § II.A.1.

The explanations in the William Declaration are sufficient to satisfy CIA's obligations when invoking Exemption 3. *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) ("In reviewing an exemption 3 claim, we do not closely scrutinize the contents of a withheld document; instead, we determine only whether there is a relevant statute and whether the document falls within that statute;" upholding State's Exemption 3 invocation based on State's assertion that the information contained intelligence sources and methods).

Additional arguments made by the Plaintiff objecting to CIA's *Glomar* invocation are similarly without merit. Plaintiff's argument focuses on the actions of individuals not employed or directly associated with the CIA. For example, Plaintiff attempts to assert that the personal opinion of a former Assistant United States Attorney regarding the national security value of information can somehow override the expertise and determination of the CIA. *See* Pl. Br. at 24. Similarly, Plaintiff suggests that certain decisions made by prosecutors regarding the testimony of a non-governmental witness at trial somehow waive the equities the CIA possess in information within its control. *Id.* at 25. Tellingly, Plaintiff provides no authority to support these arguments that unrelated actions by individuals outside the CIA prevent the agency from properly asserting a *Glomar* response. Because Plaintiff is unable to defeat the explanations provided in Williams' Declaration, this Court should hold the CIA properly involved its *Glomar* response under Exception 3.

        2.        The CIA Properly Invoked its Assertion of a *Glomar* Response Pursuant to Exemption 3 Regarding the November 2022 Request

Plaintiff attempts to assert the CIA provided no justification to support its *Glomar* response under Exception 3 in connection with Plaintiff's November 2022 Request. *Id*. However, Plaintiff's brief completely ignores the support the CIA provided in the Williams' Declaration. *See supra* § II.B.1. As explained above, Plaintiff fails to assert a plausible argument to refute the justification provided by the CIA in invoking its *Glomar* response under Exemption 3.

Meanwhile, Plaintiff's attempt to argue that a *Glomar* response is inapplicable to the records sought in the November 2022 Request also falls flat. Plaintiff supports its argument by alleging the IWC has opened its entire archives to Plaintiff with unrestricted access, suggesting that such records controlled by an international commission reflect how information within the CIA custody should be considered public. *See Id.* Further, Plaintiff states the CIA itself has posted many declassified files on whaling and the IWC in its own public reading room. *Id.* Based on the alleged availability of public information, Plaintiff asserts the "CIA cannot credibly assert a *Glomar* defense." *Id.* However, the presence of some publicly available information on whaling and the IWC does not undermine the national security interest determinations detailed in the CIA's declarations. The CIA provided specific justification laying out the risk of acknowledging the potential existence of information regarding "how CIA collects (or does not collect) certain information on particular subjects or individuals and/or could reveal information about the methods by which the Agency does (or does not) effectuate such collection, both of which pertain to intelligence collection – a function of the Agency." Williams Decl. ¶ 37, ECF No. 19-3 at 15. Therefore, this Court should find defendant properly asserted and supported its *Glomar* response under Exemption 3.

## CONCLUSION

For the foregoing reasons and those stated in Defendant's Motion and the Williams Declaration, Defendant respectfully requests that the Court deny Plaintiff's Cross Motion for Summary Judgment and enter summary judgment in the CIA's favor.

Dated: February 28, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar # 481866
United States Attorney

By:       /s/ Carlos Andino
    Carlos Andino, D.C. Bar # 1743066
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 815-8752
    Carlos.Andino@usdoj.gov

*Attorneys for the United States of America*